**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**ROBERT KANAAT,**

Plaintiff,

v.

**EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES LLC; and TRANS UNION LLC,**

Defendants.

Case No. ______________________

**COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

**JURY TRIAL DEMANDED**

FILED BY ____ D.C.
OCT 05 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## COMPLAINT

Plaintiff Robert Kanaat, appearing pro se, files this Complaint against Defendants Experian Information Solutions, Inc., Equifax Information Services LLC, and Trans Union LLC, and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action under the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 et seq., against three nationwide consumer reporting agencies. It arises from their handling of a single tradeline: a charged-off Discover-branded credit card account ending in 3256 that Capital One, National Association furnishes to each of them. Over seven months and seven written disputes, each Defendant either verified the disputed information without conducting a reasonable reinvestigation, told Plaintiff it could not find his credit file while delivering that same file to the furnisher on request, or deleted it and then put it back without the certification and notice the statute requires.

2. Each Defendant failed to conduct a reasonable reinvestigation of the disputed information as required by 15 U.S.C. § 1681i(a), and failed to follow reasonable procedures to assure maximum possible accuracy of the information it published about Plaintiff as required by 15



SCANNED

U.S.C. § 1681e(b). Equifax additionally reinserted previously deleted information into Plaintiff's file without the furnisher certification and the written notice that 15 U.S.C. § 1681i(a)(5)(B) requires. Experian additionally failed to provide the description of its reinvestigation procedure that 15 U.S.C. § 1681i(a)(6)(B)(iii) and (a)(7) require. Each Defendant's conduct was willful within the meaning of 15 U.S.C. § 1681n or, in the alternative, negligent within the meaning of 15 U.S.C. § 1681o.

**JURISDICTION AND VENUE**

3. This Court has subject-matter jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

4. Venue is proper in the Southern District of Florida, West Palm Beach Division, under 28 U.S.C. § 1391(b)(2). Plaintiff resides in Boca Raton, Palm Beach County, within this District and Division. Each Defendant assembled, maintained, and published consumer reports and consumer files concerning Plaintiff, a Florida resident; received the written disputes Plaintiff mailed from Florida; and directed its reinvestigation results and other correspondence to Plaintiff in Florida. A substantial part of the events and omissions giving rise to the claims therefore occurred in this District.

5. This Court has personal jurisdiction over each Defendant. Each Defendant regularly conducts business in Florida, is registered with the Florida Department of State to transact business in Florida and maintains a registered agent in Florida, sells consumer reports concerning Florida residents to users in Florida, and purposefully directed the conduct described in this Complaint at a Florida resident.

6. A related action, Kanaat v. Capital One, N.A., No. 9:26-cv-81053-BER (S.D. Fla., filed August 24, 2026), is pending in this District against the furnisher of the tradeline at issue under 15 U.S.C. § 1681s-2(b). This action is brought against different defendants under different provisions of the FCRA, 15 U.S.C. §§ 1681e(b) and 1681i, which impose duties on consumer reporting agencies that are independent of the furnisher's duties. Plaintiff does not seek in this action any recovery for the furnisher's conduct. A Notice of Pendency of Other Actions under Local Rule 3.8 is filed contemporaneously with this Complaint.

## PARTIES

7. Plaintiff Robert Kanaat is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c). He has resided at 6760 Congress Avenue, #204, Boca Raton, Florida 33487 since January 2025, and at all times relevant to this Complaint.

8. Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation with its principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626. Experian is registered with the Florida Department of State as a foreign profit corporation (Document No. F96000004995) and maintains a registered agent in Florida. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) and a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). For monetary fees, Experian regularly engages in the practice of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties, including reports concerning Plaintiff.

9. Defendant Equifax Information Services LLC ("Equifax") is a Georgia limited liability company with its principal place of business at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309. Equifax is registered with the Florida Department of State as a foreign limited liability company (Document No. M01000001260) and maintains a registered agent in Florida. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) and a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). For monetary fees, Equifax regularly engages in the practice of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties, including reports concerning Plaintiff.

10. Defendant Trans Union LLC ("TransUnion") is a Delaware limited liability company with its principal place of business at 555 West Adams Street, Chicago, Illinois 60661. TransUnion is registered with the Florida Department of State as a foreign limited liability company (Document No. M99000000477) and maintains a registered agent in Florida. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) and a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). For monetary fees, TransUnion regularly engages in the

practice of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties, including reports concerning Plaintiff.

11. Non-party Capital One, National Association (the "Furnisher") is the successor by merger to Discover Bank and, at all times relevant to this Complaint, furnished information concerning the account described below to each Defendant under the names "DISCOVER CARD" and "DISCOVERC." The Furnisher is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2. It is not a party to this action.

**THE STATUTORY DUTIES AT ISSUE**

12. Whenever a consumer reporting agency prepares a consumer report, it "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

13. When a consumer notifies a consumer reporting agency of a dispute concerning the completeness or accuracy of any item of information in the consumer's file, the agency "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file," generally within thirty days. 15 U.S.C. § 1681i(a)(1)(A). The agency must provide notice of the dispute to the furnisher, including "all relevant information regarding the dispute that the agency has received from the consumer," 15 U.S.C. § 1681i(a)(2); must "review and consider all relevant information submitted by the consumer," 15 U.S.C. § 1681i(a)(4); and must promptly delete or modify any item found to be "inaccurate or incomplete or cannot be verified," 15 U.S.C. § 1681i(a)(5)(A).

14. Information deleted under § 1681i(a)(5)(A) "may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate." 15 U.S.C. § 1681i(a)(5)(B)(i). If deleted information is reinserted, the agency "shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion," 15 U.S.C. § 1681i(a)(5)(B)(ii), and the notice must state that the information has been reinserted, provide the business name, address, and telephone number of the furnisher, and advise the consumer of the right to add a statement to

the file disputing the accuracy or completeness of the reinserted information, 15 U.S.C. § 1681i(a)(5)(B)(iii).

15. An agency may terminate a reinvestigation only if it "reasonably determines that the dispute by the consumer is frivolous or irrelevant," 15 U.S.C. § 1681i(a)(3)(A), and it must then notify the consumer within five business days of that determination, 15 U.S.C. § 1681i(a)(3)(B), with a notice that includes "the reasons for the determination" and "identification of any information required to investigate the disputed information," 15 U.S.C. § 1681i(a)(3)(C).

16. Upon completing a reinvestigation the agency must provide written notice of the results within five business days, 15 U.S.C. § 1681i(a)(6)(A), and, upon the consumer's request, must provide within fifteen days "a description of the procedure used to determine the accuracy and completeness of the information," including "the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available." 15 U.S.C. § 1681i(a)(6)(B)(iii), (a)(7).

17. A consumer reporting agency that willfully fails to comply with any requirement of the FCRA is liable for actual damages or statutory damages of not less than $100 and not more than $1,000, punitive damages, and costs. 15 U.S.C. § 1681n(a). An agency that negligently fails to comply is liable for actual damages and costs. 15 U.S.C. § 1681o(a).

## FACTUAL ALLEGATIONS

### A. The Account and the Tradeline

18. Plaintiff is the holder of a credit card account ending in 3256 (the "Account"), originated by Discover Bank on April 21, 2019, and reported under the Discover brand. The Account was charged off in or about early 2025. The Furnisher reports the Account to each Defendant with a balance of $25,322 and a credit limit of $11,000, and each Defendant publishes the Account in Plaintiff's consumer file and in consumer reports about him (the "Tradeline").

19. As published by each Defendant, the Tradeline reports the Account as charged off and written off while simultaneously reporting a current amount past due of $25,322 and a credit limit of $11,000. Experian and TransUnion additionally report a "highest balance" or "high balance" of $25,322 against that $11,000 limit. The status fields say the Account is closed

and charged off. The balance, past-due, and limit fields, read together as the scoring models used by Defendants' customers read them, describe a revolving credit line on which Plaintiff is currently and grossly delinquent and which is utilized at more than two hundred percent of its limit. No credit has been available on the Account since it was charged off. Plaintiff does not contend that a charged-off account can never carry a balance or a historical credit limit; he contends that the Tradeline, as Defendants published it, is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions, and Defendants' own scoring products show that effect. Plaintiff's May 18, 2026 Experian consumer report and accompanying FICO score disclosures identify, as a key factor lowering his FICO Score 8 of 494, a ratio of revolving balances to credit limits of 230 percent, a figure produced by measuring the $25,322 balance against the $11,000 credit limit on this closed Account. (Exhibit O.)

20. As of the consumer reports dated February 17, 2026 that Plaintiff obtained from each Defendant, the Tradeline also carried information that was patently incorrect, because each Defendant published data about the same Account that could not all be true:

    a. Date of last payment. Equifax reported a date of last payment of June 1, 2024; TransUnion reported June 20, 2024. A single account has one date of last payment.

    b. Payment history. Equifax and Experian each published a month-by-month delinquency grid for the Account, but the grids did not match: the Equifax grid placed the first 30-day delinquency in July 2024 and charge-off beginning February 2025, while the Experian grid placed the first 30-day delinquency in August 2024 and charge-off beginning March 2025, with the entire intervening sequence offset by one month. TransUnion published no payment history at all, stating that no payment history was available to display. A single account has one payment history.

    c. High balance. Experian and TransUnion published a high balance of $25,322 for the Account; the Equifax consumer report of February 17, 2026 displayed no high balance for it.

21. Each of these inconsistencies was visible on the face of the reports themselves. Each is an objectively verifiable factual matter, not a legal dispute about whether the debt is owed.

Plaintiff has never disputed that the Account existed or that it was charged off; his disputes have concerned the accuracy and completeness of specific data fields, each of which has a single true value.

22. Subsequent changes to the Tradeline confirm that the information Defendants verified in early 2026 was inaccurate. By September 2026, the date of last payment Equifax published had changed from June 1, 2024 to June 20, 2024. TransUnion, which published no payment history in February 2026, by September 2026 published a full month-by-month grid placing the first 30-day delinquency in July 2024 and charge-off beginning February 2025, a sequence that still conflicts with the grid Experian publishes for the same Account. No Defendant ever advised Plaintiff that any disputed field had been found inaccurate or corrected.

**B. The February 2026 Disputes**

23. On February 18, 2026, Plaintiff mailed a written dispute to each Defendant. Each letter identified the Tradeline by account number, identified the specific inconsistencies described above and the reporting of a charged-off account with an open credit limit and a current past-due balance, enclosed copies of all three February 17, 2026 consumer reports with the Tradeline highlighted, and requested a reinvestigation, deletion of the unverifiable information, and the results together with the method of verification. True and correct copies of the February 18, 2026 dispute letters are attached as Exhibit A.

24. TransUnion acknowledged receipt of Plaintiff's dispute by email on February 28, 2026. (Exhibit A.) Equifax logged Plaintiff's dispute on February 24, 2026 under Confirmation Number 6057518346 and issued its results three days later, on February 27, 2026. Those results reported, as to Account *3256: "The information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated," and then stated: "WE VERIFIED THAT THIS ITEM BELONGS TO YOU. THIS ACCOUNT HAS BEEN UPDATED. ADDITIONAL INFORMATION HAS BEEN PROVIDED FROM THE ORIGINAL SOURCE REGARDING THIS ITEM," listing among "THE FOLLOWING FIELDS [THAT] HAVE BEEN MODIFIED" the "DATE OF LAST PAYMENT" and the "HISTORICAL ACCOUNT INFORMATION." The date of last payment was one of the fields Plaintiff had disputed. Equifax thus reported in a single result that the disputed

information had been verified as accurate and that the Furnisher had modified the disputed date of last payment, and it left the Tradeline in Plaintiff's file with a date of last payment of June 1, 2024, a credit limit of $11,000, and an amount past due of $25,322. Equifax addressed those results to 9754 Palma Vista Way, Boca Raton, Florida, an address at which Plaintiff had not lived since January 2025. Experian issued its results on March 10, 2026 (Report Number 3590-6396-14), reporting the Tradeline as "Verified and Updated," meaning that "the information you disputed has been verified as accurate; however, information unrelated to your dispute has been updated," and making no correction to any field Plaintiff had identified. True and correct copies of the Equifax February 27, 2026 results and the Experian March 10, 2026 results are attached as Exhibit B.

25. TransUnion never provided Plaintiff with written notice of the results of any reinvestigation of the February 18, 2026 dispute, never deleted or corrected any disputed field, and continued to publish the Tradeline in Plaintiff's file. Apart from the February 28, 2026 email acknowledgment, the only correspondence TransUnion sent Plaintiff in February 2026 was a letter dated February 12, 2026, issued under File Number 446240035 in response to a dispute request, addressed to Plaintiff at 6760 Congress Avenue, Apt 204, Boca Raton, Florida 33487-1260, which stated: "Recently you contacted us to dispute information on your credit report, and we are in the process of investigating. Before we can mail anything to the address you requested, we need proof that the address is accurate so your personal information stays secure," and demanded copies of two identifying documents. TransUnion mailed that demand to the very address it said it could not mail to. (Exhibit L.)

26. Upon information and belief, each Defendant's reinvestigation of the February 2026 dispute consisted of transmitting an Automated Consumer Dispute Verification ("ACDV") form to the Furnisher through the e-OSCAR system with a summary dispute code, receiving the Furnisher's coded response that the information was verified, and adopting that response as the result. No Defendant compared the Furnisher's response against the three consumer reports Plaintiff had enclosed, which showed on their face that the same Account was being reported with different dates of last payment, different payment histories, and different high-balance figures, or none. No Defendant evaluated whether a charged-off, written-off account

could accurately be reported as carrying an open credit limit and a current past-due balance. No Defendant deleted the Tradeline or corrected the inconsistencies Plaintiff identified.

27. After the February 2026 reinvestigations, each Defendant continued to publish the Tradeline, with the same inconsistencies, in Plaintiff's consumer file and in consumer reports furnished to third parties. Experian's own March 10, 2026 results carried the Furnisher's comment that the Account was "previously in dispute" with the "investigation complete," and its May 18, 2026 report showed the balance refreshed as of April 22, 2026 with every disputed field unchanged.

**C. The August 2026 Disputes**

28. On August 25, 2026, Plaintiff mailed a second written dispute to each Defendant by certified mail, return receipt requested. Each letter identified the Tradeline by account number, disputed field by field the date of last payment conflict and the simultaneous reporting of a charged-off account with a current past-due amount and an open credit limit, and disputed the additional defect specific to that Defendant's file: the missing high balance at Equifax, the missing payment history at TransUnion, and, at Experian, the Furnisher's verification of the same fields without correction in March 2026. Each letter stated that the dispute rested on information not previously before the agency, including the May 18, 2026 Experian report and FICO score disclosures and the other agencies' February 17, 2026 reports; stated that the dispute was neither frivolous nor irrelevant; asked each Defendant to require the Furnisher to verify each field against its own account-level records; asked for deletion of any field or of the Tradeline that could not be verified; and requested, under 15 U.S.C. § 1681i(a)(6) and (a)(7), the results together with a description of the procedure used, including the name, address, and telephone number of the furnisher contacted. The Experian package was 34 pages, the Equifax package 46 pages, and the TransUnion package 30 pages, each with the supporting reports and identification enclosed. True and correct copies of the August 25, 2026 dispute letters and USPS proofs of delivery are attached as Exhibit C.

29. USPS delivered the disputes to Experian in Allen, Texas on August 27, 2026 (Tracking No. 9214 8901 4298 0495 3545 80); to Equifax in Atlanta, Georgia on August 27, 2026 (Tracking No. 9214 8901 4298 0495 3546 89); and to TransUnion in Chester, Pennsylvania on August 28, 2026 (Tracking No. 9214 8901 4298 0495 3548 49). (Exhibit C.)

**D. Experian: Two More Verifications in Twenty-One Days**

30. On September 2, 2026, four business days after delivery of the 34-page package, Experian issued its results (Report Number 2146-6454-52), again reporting the Tradeline as "Verified and Updated" and again stating that "information unrelated to your dispute has been updated" without identifying what had been updated. A true and correct copy of Experian's September 2, 2026 results is attached as Exhibit D.

31. The September 2, 2026 results were themselves internally inconsistent on their face. In the same tradeline block, Experian published a "Highest Balance" of $25,322 and a "Credit Limit" of $11,000, and then stated that "Between Oct 2024 and Jul 2026, your credit limit/high balance was $11,000." It published "Status Updated: Mar 2025" beside "Balance Updated: 09/02/2026," an eighteen-month-old status on a balance refreshed that day. Its balance-history table listed March 2026 twice and omitted February 2026, May 2025, and August 2025, and stamped every monthly row from October 2024 forward with the identical entry "Paid: $0 on 6/20/2024." Its comment field read, as the current comment, "Account previously in dispute - investigation complete, reported by data furnisher," and, as the previous comment, "None," meaning that Experian's own record showed the Tradeline had carried no dispute indicator at all during the months Plaintiff's February 2026 dispute was pending and after it was closed. (Exhibit D.)

32. On September 4, 2026, Plaintiff mailed Experian a third dispute by certified mail, expressly based on information that did not exist when the August 25 dispute was submitted: Equifax's September 2, 2026 reinvestigation of the same Tradeline, furnished by the same Furnisher and disputed on the same grounds, which had resulted in the Tradeline's removal from Plaintiff's Equifax file; and the internal inconsistencies in Experian's own September 2 results described above. The letter enclosed the Equifax results, the relevant pages of Experian's September 2 results, and a copy of Plaintiff's driver's license, and asked Experian to reinvestigate, to forward the letter and enclosures to the Furnisher, to delete the Tradeline as inaccurate, incomplete, or unverifiable, and, if any part of it was retained, to provide the description of its reinvestigation procedure required by 15 U.S.C. § 1681i(a)(6)(B)(iii) and (a)(7). USPS delivered it on September 8, 2026 (Tracking No. 9214 8901 4298

0496 7193 02). A true and correct copy of the September 4, 2026 dispute letter is attached as Exhibit F.

33. On September 23, 2026, Experian issued its results on the third dispute (Report Number 4064-1801-84). For the third time it reported the Tradeline as "Verified and Updated" and stated that unrelated information had been updated without saying what. A true and correct copy of Experian's September 23, 2026 results is attached as Exhibit G.

34. Every facial inconsistency in the September 2 results survived the third reinvestigation and was republished on September 23, 2026: a "Highest Balance" of $25,322 beside a "Credit Limit" of $11,000, now accompanied by the statement that "Between Jan 2025 and Sep 2026, your credit limit/high balance was $11,000"; "Status Updated: Mar 2025" beside "Balance Updated: 09/23/2026"; the balance-history table still listing March 2026 twice and still omitting February 2026, May 2025, and August 2025; and every row still stamped "Paid: $0 on 6/20/2024." The comment field now read "Account information disputed by consumer," with the previous comment still recorded as "None." The Tradeline remained in Plaintiff's Experian file, charged off, with a $25,322 past-due amount and an $11,000 open credit limit. (Exhibit G.)

35. Across three reinvestigations in seven months, Experian did not change a single field Plaintiff disputed, did not explain what "unrelated" information it had updated, and did not address the fact that another nationwide agency had removed the same Tradeline from the same Furnisher after reinvestigating the same dispute. Upon information and belief, each of Experian's three reinvestigations consisted of transmitting an ACDV to the Furnisher and adopting the Furnisher's coded verification response, without any independent review of the documents Plaintiff submitted or of the inconsistencies visible in Experian's own report.

36. Experian's file on Plaintiff also carried, throughout the same period, personal identifying information that was wrong on its face and that Experian republished after each reinvestigation. Experian's March 10, 2026 results listed among the names associated with Plaintiff's file the misspellings "ROBERT KNAAT" and "ROBERT KANATT," and among his employers the entry "ALAMENTO SOFT WARE." Its September 2, 2026 results listed six names and forty addresses. Its September 23, 2026 results listed seven names, adding a

third misspelling, "ROBERT KANAT," and forty addresses, including Plaintiff's current street address recorded twice under two different ZIP+4 codes. (Exhibits B, D, G.)

**E. Experian's Response to the Request for a Description of Its Procedure**

37. Plaintiff's August 25, 2026 dispute letter requested the description of Experian's reinvestigation procedure required by 15 U.S.C. § 1681i(a)(6)(B)(iii) and (a)(7). On September 3, 2026, after receiving the September 2 results, Plaintiff renewed that request in a separate letter mailed by certified mail, identifying Report Number 2146-6454-52 and asking for the business name, address, and telephone number of each furnisher contacted and a description of the procedure actually used. USPS delivered the request to Experian on September 9, 2026 (Tracking No. 9214 8901 4298 0496 7176 81). The fifteen-day period under § 1681i(a)(7) ran on September 24, 2026. A true and correct copy of the September 3, 2026 request and proof of delivery is attached as Exhibit H.

38. Apart from the September 23, 2026 results on the third dispute, Experian's only communication after receiving the request was an email dated September 15, 2026 from info@e.ncac.experian.com with the subject line "Important Information," marked "PLEASE DO NOT REPLY TO THIS MESSAGE." The email described Experian's dispute process in general terms and in the present and conditional tense. It did not identify the Furnisher or any other furnisher by name, did not provide any furnisher's address or telephone number, and did not describe anything that had been done in the reinvestigation of Plaintiff's dispute. Instead it told Plaintiff that if he questioned the results he could "contact the furnisher of information directly" and should "refer to your credit report for the furnisher or public records office name, address and phone number." The email closed with an advertisement for Experian's consumer products. Nothing further was received by September 24, 2026 or thereafter. A true and correct copy of the September 15, 2026 email is attached as Exhibit I.

39. The information Experian withheld was reasonably available to it. Experian's own September 2, 2026 results told Plaintiff he had "a right to also request a description of how the reinvestigation was conducted along with the business name, address, and telephone number (if reasonably available) of the furnisher of information," and the same report printed the Furnisher's contact information beneath the Tradeline: "PO BOX 30939, SALT LAKE CITY UT 84130, (800) 347-2683." (Exhibit D.) Experian had the information the

statute required it to provide, stated in writing that Plaintiff was entitled to it, and, when he asked, told him to look it up himself.

**F. Equifax: Deletion, Reinsertion Without Certification or Notice, and Contradictory Letters**

40. On September 2, 2026, Equifax issued the results of its reinvestigation of Plaintiff's August 25, 2026 dispute (Confirmation Number 6241553989). Under the heading "Removed Credit, Collection, and Bankruptcy Items," the results stated as to "DISCOVER CARD, PO BOX 30939, SALT LAKE CITY, UT, 84130-0939, (800) 347-2683, Account *3256": "Based on our investigation, we have removed the item(s) from your Equifax credit report." The Tradeline was deleted from Plaintiff's Equifax file pursuant to 15 U.S.C. § 1681i(a)(5)(A). A true and correct copy of Equifax's September 2, 2026 results is attached as Exhibit E.

41. Equifax addressed those results, which contained Plaintiff's name, the identity and partial account number of the disputed Account, and the confirmation number of his dispute, to "9754 Palma Vista Way, Boca Raton, FL 33428," an address at which Plaintiff had not lived since January 2025, and not to the Congress Avenue address printed at the top of the dispute letter to which Equifax was responding. Equifax addressed a second letter dated September 3, 2026 the same way. Plaintiff never received either letter by mail; he obtained them only by retrieving them from Equifax's online dispute portal. (Exhibit E.)

42. On or about September 9, 2026, seven days after deleting it, Equifax reinserted the Tradeline into Plaintiff's file. Plaintiff discovered the reinsertion on September 13, 2026 when he reviewed his Equifax file, and his Equifax file disclosure dated September 14, 2026 (Confirmation Number 6257542195) shows the DISCOVER CARD Tradeline with a "Date Reported" of September 9, 2026, a balance of $25,322, a credit limit of $11,000, a status of charge-off, and an amount past due of $25,322: the same Account, from the same Furnisher, with the same fields Equifax had removed on September 2.

43. Upon information and belief, Equifax reinserted the Tradeline without first obtaining from the Furnisher a certification that the information is complete and accurate, as 15 U.S.C. § 1681i(a)(5)(B)(i) requires. Upon information and belief, the reinsertion occurred because Equifax's systems accepted the Furnisher's routine monthly data transmission and loaded the

Tradeline back into Plaintiff's file without any check against Equifax's own record that the same Tradeline had been deleted after reinvestigation one week earlier. In the alternative, if Equifax did obtain a certification, it accepted a certification that data it had been unable to verify on September 2, 2026 was complete and accurate on September 9, 2026, without any inquiry into how that could be so.

44. Equifax did not notify Plaintiff in writing of the reinsertion within five business days, that is, by September 16, 2026, or at any time thereafter. Plaintiff has never received from Equifax any notice stating that the Tradeline had been reinserted, providing the Furnisher's business name, address, and telephone number in connection with a reinsertion, or advising him of his right to add a statement disputing the reinserted information, as 15 U.S.C. § 1681i(a)(5)(B)(ii) and (iii) require.

45. On September 14, 2026, Plaintiff mailed Equifax by certified mail a written demand identifying the September 2 deletion and the reinsertion, requesting a copy of the Furnisher's certification and of the reinsertion notice or a written statement that neither existed, and asking Equifax to correct the mailing address it held for him. USPS delivered the demand on September 17, 2026 (Tracking No. 9214 8901 4298 0497 3360 58). Plaintiff mailed it again on September 19, 2026, together with proof of his current address, and USPS delivered that mailing on September 24, 2026 (Tracking No. 9214 8901 4298 0497 6944 00). Equifax has never produced the certification or the notice, has never stated that neither exists, and has never corrected the address. Its only responses were the letters of September 19 and September 26, 2026 described in paragraphs 50 and 53 below. A true and correct copy of the September 14, 2026 demand is attached as Exhibit K.

46. Plaintiff's August 25, 2026 dispute letter to Equifax requested the description of Equifax's reinvestigation procedure required by 15 U.S.C. § 1681i(a)(6)(B)(iii) and (a)(7). On September 3, 2026, Plaintiff renewed that request in a separate letter mailed by certified mail, identifying Confirmation Number 6241553989 and enclosing a copy of his driver's license, which bears the Congress Avenue address. USPS delivered the request to Equifax on September 7, 2026 (Tracking No. 9214 8901 4298 0496 7176 98). (Exhibit H.)

47. Equifax did not provide the description. Instead, between September 10 and September 11, 2026, it sent Plaintiff three letters, two of which cannot be reconciled with the third. (Exhibit J.)

   a. A letter dated September 10, 2026 (Confirmation Number 6253525977) acknowledged "your request concerning inaccurate information on your Equifax credit file" and stated: "The information you provided as proof of your identity does not match the information we currently have on your credit file." It demanded one document from a category of Social Security number proofs and one from a category of address proofs, and told Plaintiff to return the letter "along with the requested information and your original correspondence."

   b. A letter dated September 11, 2026 (Confirmation Number 6254513776) stated: "Our records show that the following item(s) you recently disputed are already a part of an active, ongoing dispute. This means your initial dispute concerning these item(s) has not been finalized, and our review indicates that no new, relevant information was provided on the current dispute and, therefore we are closing our investigation with respect to the below item(s)." The item identified was "DISCOVER CARD Account Ending 3256," listed under the heading "Item(s) that currently have a dispute in-process and the results will be sent to you within 30 days of the date initially received by Equifax."

   c. A second letter dated September 11, 2026 (Confirmation Number 6254513766) again stated that the information Plaintiff had provided as proof of his identity "does not match the information we currently have on your credit file" and again demanded the two categories of identification documents.

48. On September 11, 2026, therefore, Equifax located Plaintiff's credit file, identified the DISCOVER CARD Account ending 3256 within it, reported that the Account was the subject of an active reinvestigation whose results would be sent within thirty days, and closed a dispute concerning it for lack of new information, while on the same day, and on the day before, telling Plaintiff that it could not match his identity to a credit file. The identification Plaintiff had supplied was a government-issued driver's license bearing his name, date of birth, and current Congress Avenue address. Equifax's file did not match that

license because Equifax's file was wrong: the September 14, 2026 file disclosure lists 9754 Palma Vista Way as Plaintiff's current address and 6760 Congress Avenue as a former address, the reverse of the truth.

49. Equifax has never sent Plaintiff the results of the "active, ongoing dispute" it described on September 11, 2026. On September 19, 2026, Plaintiff nonetheless mailed Equifax, by certified mail, proof of his current address in the form Equifax's letters demanded, a utility bill for 6760 Congress Avenue, together with copies of his September 3, 2026 request and his September 14, 2026 demand. USPS delivered that mailing on September 24, 2026 (Tracking No. 9214 8901 4298 0497 6944 00).

50. Equifax's next communications were two letters dated September 19, 2026, sent, upon information and belief, in response to the September 14, 2026 demand, which USPS had delivered two days earlier and which was the only communication Plaintiff had sent Equifax since September 3. The first (Confirmation Number 6262559474) stated for a third time that the identification Plaintiff had provided "does not match the information we currently have on your credit file" and demanded the same two categories of documents. Beneath that demand, under the heading "Answers To Your Questions," it addressed "your question regarding the investigation process" with a description in general terms ("Often, Equifax will then transmit your dispute to the furnisher of the information . . . for review and investigation. . . . The furnisher reviews the information provided, conducts an investigation with respect to the disputed information and reports the results back to us electronically") that named no furnisher, gave no address or telephone number, and described nothing done in the reinvestigation of Plaintiff's dispute. The second (Confirmation Number 6262559294) stated: "Our records show that you previously disputed the item(s) listed below at least twice within the last 90 days, and that the disputed information was found to be accurate based on those prior investigations. Our review indicates that no new, relevant information was provided with the current dispute, and therefore we are closing our investigation with respect to the below item(s)," and identified "DISCOVER CARD Account Ending 3256." The two letters bear the same date. In one, Equifax had located Plaintiff's file, identified the Account in it, reviewed the disputes lodged against that Account over the preceding ninety days, and closed a further dispute concerning it; in the other, Equifax could not match Plaintiff's

identity to a credit file. It was the same pair of statements Equifax had made on September 11, 2026, eight days earlier. (Exhibit J.)

51. After receiving the utility bill on September 24, 2026, Equifax sent two further letters dated September 26, 2026 (Confirmation Numbers 6269514732 and 6269505514), each stating again that Plaintiff's identification "does not match the information we currently have on your credit file" and each demanding the same two categories of documents. (Exhibit J.) Equifax has thus demanded identification from Plaintiff five times between September 10 and September 26, 2026, while locating his file, naming the Account in it, closing disputes concerning it, and reinvestigating it, and the generic statement in its September 19, 2026 letter is the only description of its reinvestigation procedure it has ever provided.

52. Equifax's letter of September 11, 2026 (Confirmation Number 6254513776) was a determination under 15 U.S.C. § 1681i(a)(3) that a dispute concerning the Tradeline was frivolous or irrelevant. The notice did not identify any information required to investigate the disputed information, as § 1681i(a)(3)(C)(ii) requires; it referred Plaintiff generically to a website. The request Equifax closed was not a new dispute at all. It was Plaintiff's statutory request for a description of the procedure Equifax had used in the reinvestigation it had already completed, which Equifax logged as a dispute, then closed as duplicative, and never answered.

53. Equifax's letter of September 19, 2026 (Confirmation Number 6262559294) was a second determination under 15 U.S.C. § 1681i(a)(3), and its stated premise was false. The "prior investigations" on which Equifax relied were its February 2026 reinvestigation, which reported the Tradeline "verified as accurate" while reporting that the Furnisher had modified the very field Plaintiff disputed, and its reinvestigation of the August 25, 2026 dispute, which deleted the Tradeline because it could not be verified. Equifax thus refused to reinvestigate on the ground that information it had removed as unverifiable seventeen days earlier had been "found to be accurate." The submission it closed was, again, not a dispute: it was Plaintiff's demand for the certification and the reinsertion notice that § 1681i(a)(5)(B) required Equifax to have obtained and sent.

### G. TransUnion: A File It Could Deliver to the Furnisher but Not Locate for the Consumer

54. On August 26, 2026, in response to a dispute request Plaintiff had submitted to TransUnion, TransUnion issued to Plaintiff a one-page letter captioned "Re: Unable to Locate Credit Report dispute request." The letter bears File Number 471467697, a number different from File Number 446240035, under which TransUnion had written to Plaintiff on February 12, 2026, acknowledged his dispute on February 28, 2026, and would produce his consumer disclosure on September 3, 2026. It stated: "TransUnion maintains credit reports on individuals who have existing credit histories. Based on the information you provided, we are unable to locate a credit report for you." The letter was correctly addressed to Plaintiff at 6760 Congress Avenue, Apt 204, Boca Raton, Florida 33487-1260, and was delivered there. A true and correct copy is attached as Exhibit L.

55. TransUnion had a credit file on Plaintiff throughout this period, under File Number 446240035, and it knew how to find it. TransUnion had acknowledged Plaintiff's February 18, 2026 dispute of the Tradeline in that file on February 28, 2026. It furnished the file to the Furnisher, under the name DISCOVER CARD at 2500 Lake Cook Road, Riverwoods, Illinois, for account review on April 16, 2026, on August 16, 2026, ten days before the "unable to locate" letter, and again on September 3, 2026, eight days after it. It furnished the file to Self Lender Inc. (listed on TransUnion's disclosure as "FTSELF LENDER INC.") for account review on August 17, 2026. And on September 3, 2026 it produced the same file to Plaintiff himself as a 35-page consumer disclosure listing his date of birth, the last four digits of his Social Security number, his current Congress Avenue address as reported on August 22, 2026, and the Tradeline. (Exhibit M.) And on September 24, 2026 it reinvestigated Plaintiff's August 25, 2026 dispute in that same file and issued results under File Number 446240035. (Exhibit P.) TransUnion could locate Plaintiff's file for a furnisher, for a lender, for its own disclosure product, and for a reinvestigation. It told the consumer that it could not.

56. USPS delivered Plaintiff's 30-page August 25, 2026 dispute to TransUnion on August 28, 2026. (Exhibit C.) On September 24, 2026, TransUnion issued the results of its reinvestigation under File Number 446240035, the same file number under which it had corresponded with Plaintiff since February 2026. The results stated: "INVESTIGATION

RESULTS - VERIFIED AS ACCURATE AND UPDATED: The disputed item(s) was verified as accurate; however, other information has also changed," and, as to "DISCOVER CARD #601100849413****": "We investigated the information you disputed and the disputed information was VERIFIED AS ACCURATE; however, we updated: Date Updated; Historical Trended Data." The only changes were to the "Date Updated" field, now September 22, 2026, and the removal of the historical trended data, which the same results state TransUnion removes from any account once it is disputed. No disputed field was corrected. The results continued to report the Account as closed on September 10, 2023, with a credit limit of $11,000, a balance of $25,322, a past-due amount of $25,322, a pay status of charge-off, and terms of "Paid Monthly." The results do not state which of the four actions they list in the alternative ("Updated your credit report . . . ; OR Determined that the information . . . already shows the requested status; OR Determined that the data furnisher had previously verified the reported information . . . ; OR Asked the data furnisher . . . to . . . Investigate your dispute") TransUnion took. A true and correct copy of the September 24, 2026 results is attached as Exhibit P.

57. On September 11, 2026, TransUnion sent Plaintiff a one-page letter (File Reference 446240035-135) in response to his request for a description of its reinvestigation procedure. The letter described TransUnion's dispute process in general terms and in the present tense ("when you open a dispute with TransUnion, we carefully review all the relevant information you provide"). It did not name the Furnisher or any furnisher, did not provide any address or telephone number, and did not describe anything done in the reinvestigation of Plaintiff's dispute. It told Plaintiff instead that the furnisher's "name, address, and, if available, phone number will be included in the Investigation Results document you receive at the conclusion of the investigation." The same letter announced a policy: "We may also find that the company that provided the information known as the data furnisher - previously verified it as accurate. If so, those items won't be disputed again." A true and correct copy of the September 11, 2026 letter is attached as Exhibit N.

58. As published by TransUnion on September 3, 2026, the Tradeline reported the Account as closed on September 10, 2023, while reporting a "Credit limit of $11,000 from 03/2026 to 08/2026" and a "High balance of $25,322 from 03/2026 to 08/2026," a pay status of charge-

off, a balance of $25,322, and terms of "Paid Monthly." An account closed in 2023 does not carry a credit limit "from 03/2026 to 08/2026." That inconsistency appears in a single tradeline block on TransUnion's own report and required no contact with the Furnisher to detect. (Exhibit M.) TransUnion's September 24, 2026 results republished the closed date, the $11,000 credit limit, the $25,322 balance and past-due amount, the charge-off status, and the "Paid Monthly" terms as "verified as accurate." (Exhibit P.)

**H. Dissemination and Injury**

59. Dissemination to third parties. After the February 2026 reinvestigations, and while the Tradeline carried the inaccurate and materially misleading information described above, each Defendant furnished consumer reports containing the Tradeline to third parties. Experian's records show that it furnished Plaintiff's consumer report to Bilt Technologies Inc. on August 17, 2026; to Self Financial, Inc. on August 23, 2026; to Kikoff Lending LLC on September 4, 2026; and to the Furnisher on August 3 and September 5, 2026. (Exhibits D, G.) TransUnion's records show that it furnished Plaintiff's consumer report to Self Lender Inc. on August 17, 2026 and to the Furnisher on April 16, August 16, and September 3, 2026, and to other users whose identities are recorded in TransUnion's file and will be established in discovery. (Exhibit M.) Upon information and belief, Equifax furnished consumer reports containing the Tradeline to third parties during the same period, whose identities are recorded in Equifax's file and will be established in discovery. Since September 9, 2026, the reinserted Tradeline has been in the file Equifax maintains for furnishing consumer reports to its users. Equifax's September 14, 2026 file disclosure does not identify any lender that received Plaintiff's consumer report after the reinsertion, and Plaintiff has no recipient data for that period because Equifax has not produced it; the identities of the users to whom Equifax has furnished the reinserted Tradeline are in Equifax's records. The publication of false and misleading information about Plaintiff to third parties is itself a concrete injury of the kind that has long provided a basis for suit at common law. See TransUnion LLC v. Ramirez, 594 U.S. 413 (2021); Losch v. Nationstar Mortg. LLC, 995 F.3d 937, 943-44 (11th Cir. 2021).

60. Credit harm. The Tradeline suppressed the credit scores computed from each Defendant's file and sold to lenders. As of February 17, 2026, according to the FICO score disclosures

that Equifax and TransUnion each issued to Plaintiff from their own files that day, Plaintiff's FICO Score 8 computed from Equifax data stood at 541 and from TransUnion data at 510, and each disclosure identified as factors lowering the score a "ratio of your revolving balances to your credit limits" of 230 percent and, on Equifax data, a "total amount past due on all of your accounts" of $25,322, figures produced entirely by the Tradeline. As of May 18, 2026, Plaintiff's FICO Score 8 computed from Experian data stood at 494 and his FICO Bankcard Score 8 at 491, with the disclosures again identifying the 230 percent revolving-utilization figure produced by the Tradeline as a key factor lowering the scores. (Exhibit O.) The suppression of a consumer's credit score by inaccurate reporting is a concrete injury. See Pedro v. Equifax, Inc., 868 F.3d 1275 (11th Cir. 2017).

61. Misdirected correspondence. Equifax addressed Plaintiff's February 27, September 2, and September 3, 2026 dispute results, containing his name and the details of charged-off accounts, to an address at which he has not lived since January 2025, and, upon information and belief, mailed them there. None reached him by mail. That misdirection was the direct result of Equifax maintaining Plaintiff's current and former addresses in reverse, and it is the same error that led Equifax to reject his government-issued identification.

62. Out-of-pocket and time expense. Plaintiff incurred certified-mail, mailing-service, copying, and report-purchase costs in disputing the Tradeline with each Defendant and in responding to Equifax's identification demands, and expended substantial time investigating, documenting, disputing, and attempting to correct the reporting. These expenditures responded to inaccurate and misleading information that Defendants had published to third parties and that had suppressed Plaintiff's credit scores, not to a bare or unpublished statutory violation.

63. Emotional distress. Plaintiff suffered frustration, anxiety, and humiliation from the repeated verification of information that Defendants' own reports showed to be internally inconsistent; from being told by two of the three nationwide agencies, within sixteen days of each other, that they could not identify him or locate his file, while those same agencies were processing his disputes and, in TransUnion's case, delivering his file to a lender and to the Furnisher; from learning that Equifax had mailed his personal financial information to an address where he does not live; and from the futility of a dispute process in which a 46-page

documented submission and a 34-page documented submission produced, respectively, a deletion that was reversed in a week and a verification issued in four business days.

64. Impairment of the ability to correct the file. By withholding the description of the procedures they used and the identity and contact information of the furnisher they contacted, Experian and Equifax deprived Plaintiff of the information the statute gives consumers precisely so that they can evaluate a reinvestigation and direct their next dispute, prolonging the publication of the inaccurate Tradeline.

**COUNT I**

**Violation of 15 U.S.C. § 1681i(a)**

**(Experian: Failure to Conduct a Reasonable Reinvestigation)**

65. Plaintiff realleges and incorporates by reference paragraphs 1 through 64 above as if fully set forth herein. Count I does not incorporate any allegation of any other Count.

66. Experian is a consumer reporting agency within the meaning of 15 U.S.C. § 1681a(f).

67. Plaintiff notified Experian directly, in writing, on February 18, 2026, August 25, 2026, and September 4, 2026, that he disputed the completeness and accuracy of specific items of information in his file concerning the Tradeline, and supplied with each dispute the documents on which it rested.

68. Experian violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation of the disputed information on each occasion; violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider the relevant information Plaintiff submitted, including the consumer reports showing the same Account reported with conflicting dates of last payment, conflicting payment histories, and conflicting high-balance figures, and, on the third dispute, another nationwide agency's deletion of the same Tradeline; violated 15 U.S.C. § 1681i(a)(2) by, upon information and belief, transmitting to the Furnisher only a summary dispute code rather than all relevant information Plaintiff had provided; and violated 15 U.S.C. § 1681i(a)(5)(A) by failing to delete or modify information that was inaccurate, incomplete, or could not be verified, including a charged-off, written-off Account reported with a current $11,000 credit limit and a $25,322 current past-due balance, a "highest balance" of $25,322 published beside Experian's own statement that the "credit

limit/high balance was $11,000," a status field eighteen months stale beside a balance refreshed the same day, and a balance-history table that duplicated one month and omitted three.

69. A reasonable reinvestigation requires more than transmitting the consumer's dispute to the furnisher and adopting the furnisher's response, particularly where the consumer has supplied documents that contradict the furnisher's data and where the inaccuracy is apparent from the agency's own file. See Losch v. Nationstar Mortg. LLC, 995 F.3d 937 (11th Cir. 2021); Cushman v. Trans Union Corp., 115 F.3d 220 (3d Cir. 1997); Stevenson v. TRW Inc., 987 F.2d 288 (5th Cir. 1993). Experian's three reinvestigations, each returning the identical result, one of them within four business days of delivery of a 34-page documented submission, with no field changed and no explanation of what was updated, were not reasonable.

70. Experian's violations were willful. Experian knew its obligations under § 1681i; its own results letters recited them. It received three documented disputes identifying the same facial inconsistencies, verified the same information each time without change, was told in writing that another nationwide agency had removed the same Tradeline after reinvestigating the same dispute, and verified again. It stated in writing that Plaintiff was entitled to a description of the procedure it used and then, when asked, declined to describe any procedure. That conduct was knowing or, at a minimum, in reckless disregard of an unjustifiably high risk that Experian was verifying and republishing inaccurate information. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007). In the alternative, pursuant to Fed. R. Civ. P. 8(d)(2), Experian's violations were negligent.

71. As a direct and proximate result of Experian's violations, Plaintiff suffered the injuries described in paragraphs 59 through 64. Plaintiff is entitled under 15 U.S.C. § 1681n to actual damages or, in the alternative, statutory damages of not less than $100 and not more than $1,000 for each willful violation, together with punitive damages and costs; or, if the violations were negligent, to actual damages and costs under 15 U.S.C. § 1681o.

**COUNT II**

**Violation of 15 U.S.C. § 1681e(b)**

**(Experian: Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy)**

72. Plaintiff realleges and incorporates by reference paragraphs 1 through 64 above as if fully set forth herein. Count II does not incorporate any allegation of any other Count.

73. Experian prepared and furnished consumer reports concerning Plaintiff that contained the Tradeline, including reports furnished to Bilt Technologies Inc. on August 17, 2026, to Self Financial, Inc. on August 23, 2026, to Kikoff Lending LLC on September 4, 2026, and to the Furnisher on August 3 and September 5, 2026.

74. Those reports were inaccurate. They reported a closed, charged-off, written-off Account as carrying a current $11,000 credit limit and a $25,322 current past-due balance, from which the scoring models computed a revolving-utilization figure of 230 percent on an account on which no credit was available; they reported a "highest balance" of $25,322 while stating in the same tradeline block that the "credit limit/high balance was $11,000"; they carried a status eighteen months stale beside a balance refreshed monthly; they carried a balance history that duplicated one month and omitted three; and, following the February 2026 dispute, they carried the Tradeline without any indicator that the consumer disputed it. Each of these is either patently incorrect or misleading in such a way and to such an extent that it can be expected to adversely affect a credit decision. See Erickson v. First Advantage Background Servs. Corp., 981 F.3d 1246 (11th Cir. 2020); Holden v. Holiday Inn Club Vacations, Inc., 98 F.4th 1359 (11th Cir. 2024).

75. Experian failed to follow reasonable procedures to assure maximum possible accuracy of that information. From March 10, 2026 forward Experian had written notice, with supporting documents, of the specific inaccuracies in the Tradeline, and it continued to publish the Tradeline unchanged. The inconsistencies were visible within a single tradeline block of Experian's own report and required no contact with the Furnisher to detect; Experian's own written description of its process states that in some instances it is "able to determine whether the disputed information should be changed or deleted without having to contact the furnisher." (Exhibit I.) Experian maintained no procedure, or no adequate procedure, to

identify data in a tradeline that is facially inconsistent with other data in the same tradeline, to identify a charged-off account reported with an open credit limit, or to act on a consumer's documented notice of such inconsistencies. Experian likewise maintained no adequate procedure to keep Plaintiff's identifying information accurate: it carried three misspellings of his surname, a corrupted employer name, and forty addresses, added a new misspelling during the very period in which it was reinvestigating his disputes, and republished all of it after each reinvestigation.

76. Experian's violations were willful, for the reasons stated in Count I, and in reckless disregard of an unjustifiably high risk that its reports about Plaintiff were inaccurate. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007). In the alternative, pursuant to Fed. R. Civ. P. 8(d)(2), Experian's violations were negligent.

77. As a direct and proximate result of Experian's violations, Plaintiff suffered the injuries described in paragraphs 59 through 64. Plaintiff is entitled under 15 U.S.C. § 1681n to actual damages or, in the alternative, statutory damages of not less than $100 and not more than $1,000 for each willful violation, together with punitive damages and costs; or, if the violations were negligent, to actual damages and costs under 15 U.S.C. § 1681o.

**COUNT III**

**Violation of 15 U.S.C. § 1681i(a)(6)(B)(iii) and (a)(7)**

**(Experian: Failure to Provide a Description of the Reinvestigation Procedure)**

78. Plaintiff realleges and incorporates by reference paragraphs 1 through 64 above as if fully set forth herein. Count III does not incorporate any allegation of any other Count.

79. Plaintiff requested from Experian, in his August 25, 2026 dispute and again by separate written request delivered September 9, 2026, a description of the procedure used to determine the accuracy and completeness of the disputed information, including the business name and address of any furnisher contacted and its telephone number.

80. Experian was required to provide that description not later than fifteen days after receiving the request. 15 U.S.C. § 1681i(a)(7). It did not. The only communication it sent, the September 15, 2026 email, contained no description of the procedure used in Plaintiff's reinvestigation, no furnisher name, no address, and no telephone number, and directed

Plaintiff to find that information himself. Experian had the information, printed it on the same report in which it told Plaintiff he was entitled to it, and withheld it.

81. Experian's violation was willful. It knew the content the statute required, recited Plaintiff's right to it in its own results letter, and responded with a form email and an advertisement. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007). In the alternative, pursuant to Fed. R. Civ. P. 8(d)(2), Experian's violation was negligent.

82. As a direct and proximate result of Experian's violation, Plaintiff suffered the injuries described in paragraphs 62 through 64, including the prolonged publication of the inaccurate Tradeline that a compliant description would have enabled him to address. Plaintiff is entitled under 15 U.S.C. § 1681n to actual damages or, in the alternative, statutory damages of not less than $100 and not more than $1,000 for each willful violation, together with punitive damages and costs; or, if the violations were negligent, to actual damages and costs under 15 U.S.C. § 1681o.

**COUNT IV**

**Violation of 15 U.S.C. § 1681i(a)(5)(B)**

**(Equifax: Reinsertion of Deleted Information Without Certification or Notice)**

83. Plaintiff realleges and incorporates by reference paragraphs 1 through 64 above as if fully set forth herein. Count IV does not incorporate any allegation of any other Count.

84. Equifax is a consumer reporting agency within the meaning of 15 U.S.C. § 1681a(f).

85. On September 2, 2026, following its reinvestigation of Plaintiff's August 25, 2026 dispute, Equifax deleted the Tradeline from Plaintiff's file pursuant to 15 U.S.C. § 1681i(a)(5)(A). On or about September 9, 2026, Equifax reinserted the Tradeline into Plaintiff's file.

86. Equifax violated 15 U.S.C. § 1681i(a)(5)(B)(i) by reinserting the deleted Tradeline without first obtaining from the Furnisher a certification that the information is complete and accurate, or, in the alternative, by reinserting it on the basis of a purported certification that Equifax had no reasonable basis to accept, given that its own reinvestigation had resulted in the deletion of the same information seven days earlier.

87. Equifax violated 15 U.S.C. § 1681i(a)(5)(B)(ii) and (iii) by failing to notify Plaintiff in writing of the reinsertion within five business days, or at all, and by failing to provide him with the Furnisher's business name, address, and telephone number and notice of his right to add a statement disputing the reinserted information.

88. Equifax also violated 15 U.S.C. § 1681i(a)(5)(C) by failing to maintain reasonable procedures designed to prevent the reappearance in Plaintiff's file, and in consumer reports on him, of information deleted after reinvestigation. Upon information and belief, Equifax's systems accepted the Furnisher's next routine data transmission and restored the Tradeline seven days after its deletion without any check against the deletion.

89. Equifax's violations were willful. The reinsertion requirements of § 1681i(a)(5)(B) are unambiguous, Equifax processes reinsertions as a matter of routine, and, upon information and belief, Equifax's systems are designed to accept a furnisher's monthly data transmission without checking whether the same tradeline was deleted after reinvestigation days earlier, a design choice that guarantees uncertified reinsertions. Equifax then answered Plaintiff's written demand for the certification and notice by closing it as a repeat dispute and demanding identification, and never produced either document. That conduct was knowing or in reckless disregard of Equifax's obligations. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007). In the alternative, pursuant to Fed. R. Civ. P. 8(d)(2), Equifax's violations were negligent.

90. As a direct and proximate result of Equifax's violations, the inaccurate Tradeline that Equifax had removed from Plaintiff's file was restored to the file Equifax maintains for furnishing consumer reports to its users, where it has remained since September 9, 2026, without the notice that would have allowed Plaintiff to respond, and Plaintiff suffered the injuries described in paragraphs 59 through 64, including the distress of discovering the reinsertion and the expense of the demands it required. Plaintiff is entitled under 15 U.S.C. § 1681n to actual damages or, in the alternative, statutory damages of not less than $100 and not more than $1,000 for each willful violation, together with punitive damages and costs; or, if the violations were negligent, to actual damages and costs under 15 U.S.C. § 1681o.

## COUNT V

### Violation of 15 U.S.C. § 1681i(a)

### (Equifax: Failure to Conduct a Reasonable Reinvestigation and Unlawful Termination of Reinvestigation)

91. Plaintiff realleges and incorporates by reference paragraphs 1 through 64 above as if fully set forth herein. Count V does not incorporate any allegation of any other Count.

92. Plaintiff notified Equifax directly, in writing, on February 18, 2026 and August 25, 2026, that he disputed the completeness and accuracy of specific items of information in his file concerning the Tradeline, and supplied with each dispute the documents on which it rested.

93. Equifax violated 15 U.S.C. § 1681i(a)(1)(A), (a)(4), and (a)(5)(A) in its reinvestigation of the February 18, 2026 dispute, which it logged on February 24, 2026 and closed three days later without deleting the Tradeline or correcting the inconsistencies Plaintiff identified, notwithstanding that the consumer reports Plaintiff enclosed showed the same Account reported with a different date of last payment, a different payment history, and a different high-balance figure at each agency; that Equifax's own results reported the disputed date of last payment as both "verified as accurate" and "modified" by the Furnisher; and that the date of last payment Equifax published was changed again before September 2026.

94. Equifax violated 15 U.S.C. § 1681i(a)(3) by terminating, on September 11, 2026, a dispute concerning the Tradeline on the stated ground that no new relevant information had been provided, without a reasonable determination that the dispute was frivolous or irrelevant, and by issuing a termination notice that did not identify any information required to investigate the disputed information, as § 1681i(a)(3)(C)(ii) requires. The request Equifax terminated was Plaintiff's statutory request for a description of Equifax's completed reinvestigation, which Equifax mischaracterized as a dispute and then refused to process as one. Equifax violated § 1681i(a)(3) a second time on September 19, 2026 by terminating Plaintiff's demand for the reinsertion certification and notice as a repeat dispute of information "found to be accurate" in prior investigations, when Equifax's most recent reinvestigation had deleted that information as unverifiable.

95. Equifax further represented on September 11, 2026 that the Tradeline was the subject of an active reinvestigation whose results would be sent within thirty days of initial receipt. Either that representation was false, or Equifax completed or abandoned that reinvestigation without providing the written notice of results that 15 U.S.C. § 1681i(a)(6)(A) requires.

96. Equifax violated 15 U.S.C. § 1681i(a)(6)(B)(iii) and (a)(7) by failing to provide, within fifteen days of Plaintiff's September 3, 2026 request delivered September 7, 2026, or at any time since, any description of the procedure used to determine the accuracy and completeness of the disputed information or the business name, address, and telephone number of the furnisher contacted. The generic statement of Equifax's "investigation process" in its September 19, 2026 letter is not that description: it names no furnisher, gives no address or telephone number, and describes nothing done in the reinvestigation of Plaintiff's dispute. Equifax's demand for additional identification did not excuse compliance: Plaintiff supplied a government-issued driver's license bearing his current address with the request, and the only reason it "did not match" Equifax's file was that Equifax had recorded his current and former addresses in reverse.

97. Equifax's violations were willful. Equifax knew its obligations under § 1681i; its own results letters recite the consumer's right to a description of the procedure used. It closed a documented dispute in three days, later treated a statutory request as a dispute and closed that as duplicative, rejected valid government identification because of its own address error, and answered a written demand identifying each of these failures by closing it as a repeat dispute and demanding identification twice more. That conduct was knowing or in reckless disregard of an unjustifiably high risk of noncompliance. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007). In the alternative, pursuant to Fed. R. Civ. P. 8(d)(2), Equifax's violations were negligent.

98. As a direct and proximate result of Equifax's violations, Plaintiff suffered the injuries described in paragraphs 59 through 64. Plaintiff is entitled under 15 U.S.C. § 1681n to actual damages or, in the alternative, statutory damages of not less than $100 and not more than $1,000 for each willful violation, together with punitive damages and costs; or, if the violations were negligent, to actual damages and costs under 15 U.S.C. § 1681o.

## COUNT VI

## Violation of 15 U.S.C. § 1681e(b)

## (Equifax: Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy)

99. Plaintiff realleges and incorporates by reference paragraphs 1 through 64 above as if fully set forth herein. Count VI does not incorporate any allegation of any other Count.

100. Equifax prepared and furnished consumer reports and consumer file disclosures concerning Plaintiff that contained the Tradeline, including the reports furnished to third parties described in paragraph 59 and the file disclosures issued to Plaintiff on and after September 9, 2026.

101. Those reports were inaccurate. They reported a closed, charged-off, written-off Account as carrying a current $11,000 credit limit and a $25,322 current past-due balance, from which the scoring models computed a revolving-utilization figure of 230 percent; they reported, as of February 2026, a date of last payment that Equifax later changed; and they reported the Tradeline after September 9, 2026 notwithstanding that Equifax's own reinvestigation had found it could not be verified. Equifax's file also recorded Plaintiff's current and former addresses in reverse, an inaccuracy that caused Equifax to mail his dispute results to an address where he does not live and to reject his government-issued identification. Each of these is either patently incorrect or misleading in such a way and to such an extent that it can be expected to adversely affect a credit decision. See Erickson v. First Advantage Background Servs. Corp., 981 F.3d 1246 (11th Cir. 2020); Holden v. Holiday Inn Club Vacations, Inc., 98 F.4th 1359 (11th Cir. 2024).

102. Equifax failed to follow reasonable procedures to assure maximum possible accuracy of that information. From February 2026 forward Equifax had written notice, with supporting documents, of the specific inaccuracies in the Tradeline. Upon information and belief, Equifax's procedures permit a furnisher's routine data transmission to restore a tradeline that Equifax deleted after reinvestigation, with no check against the deletion and no certification. Equifax's procedures for matching a consumer's identity to his file were unreasonable as applied to Plaintiff: on the same day, Equifax located his file and reported on a specific account in it while telling him it could not match his identity to a file, because it had his

current and former addresses reversed. And Equifax maintained no procedure, or no adequate procedure, to identify a charged-off account reported with an open credit limit or to act on a consumer's documented notice of that inconsistency.

103. Equifax's violations were willful, for the reasons stated in Counts IV and V, and in reckless disregard of an unjustifiably high risk that its reports about Plaintiff were inaccurate. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007). In the alternative, pursuant to Fed. R. Civ. P. 8(d)(2), Equifax's violations were negligent.

104. As a direct and proximate result of Equifax's violations, Plaintiff suffered the injuries described in paragraphs 59 through 64. Plaintiff is entitled under 15 U.S.C. § 1681n to actual damages or, in the alternative, statutory damages of not less than $100 and not more than $1,000 for each willful violation, together with punitive damages and costs; or, if the violations were negligent, to actual damages and costs under 15 U.S.C. § 1681o.

**COUNT VII**

**Violation of 15 U.S.C. § 1681i(a)**

**(TransUnion: Failure to Conduct a Reasonable Reinvestigation)**

105. Plaintiff realleges and incorporates by reference paragraphs 1 through 64 above as if fully set forth herein. Count VII does not incorporate any allegation of any other Count.

106. TransUnion is a consumer reporting agency within the meaning of 15 U.S.C. § 1681a(f).

107. Plaintiff notified TransUnion directly, in writing, on February 18, 2026 and August 25, 2026, that he disputed the completeness and accuracy of specific items of information in his file concerning the Tradeline, and supplied with each dispute the documents on which it rested. TransUnion acknowledged the first dispute on February 28, 2026 and received the second on August 28, 2026.

108. TransUnion violated 15 U.S.C. § 1681i(a)(1)(A), (a)(4), and (a)(5)(A) by failing to conduct a reasonable reinvestigation of the February 18, 2026 dispute, leaving every disputed field unchanged notwithstanding the consumer reports Plaintiff enclosed showing the same Account reported with a different date of last payment and a different payment history at each agency, and by verifying the Tradeline as accurate on September 24, 2026 in response

to the August 25, 2026 dispute without correcting any disputed field, notwithstanding inconsistencies visible on the face of TransUnion's own report.

109. TransUnion's written statement of September 11, 2026 that items a furnisher "previously verified" "won't be disputed again" describes a practice of declining to reinvestigate disputes of previously verified information regardless of the information the consumer supplies. That practice is not the reasonable, case-specific frivolousness determination that 15 U.S.C. § 1681i(a)(3) permits. TransUnion's September 24, 2026 results do not state whether TransUnion forwarded the dispute to the Furnisher or instead determined that the Furnisher "had previously verified the reported information"; they recite both in the alternative. Upon information and belief, TransUnion applied the practice it had announced to Plaintiff's August 25, 2026 dispute.

110. TransUnion's violations were willful. TransUnion acknowledged Plaintiff's dispute in February 2026 and never reported a result; on August 26, 2026, in a letter under a different file number responding to a dispute request, it told him it could not locate his file, while furnishing that same file to the Furnisher and to a lender in the same weeks; announced in writing a policy of refusing to reinvestigate previously verified items, and then verified the Tradeline a second time without correcting inconsistencies visible within a single block of its own report. That conduct was knowing or in reckless disregard of an unjustifiably high risk of noncompliance. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007). In the alternative, pursuant to Fed. R. Civ. P. 8(d)(2), TransUnion's violations were negligent.

111. As a direct and proximate result of TransUnion's violations, Plaintiff suffered the injuries described in paragraphs 59 through 64. Plaintiff is entitled under 15 U.S.C. § 1681n to actual damages or, in the alternative, statutory damages of not less than $100 and not more than $1,000 for each willful violation, together with punitive damages and costs; or, if the violations were negligent, to actual damages and costs under 15 U.S.C. § 1681o.

## COUNT VIII

## Violation of 15 U.S.C. § 1681e(b)

## (TransUnion: Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy)

112. Plaintiff realleges and incorporates by reference paragraphs 1 through 64 above as if fully set forth herein. Count VIII does not incorporate any allegation of any other Count.

113. TransUnion prepared and furnished consumer reports concerning Plaintiff that contained the Tradeline, including reports furnished to Self Lender Inc. on August 17, 2026 and to the Furnisher on April 16, August 16, and September 3, 2026, the consumer disclosure it produced on September 3, 2026, and the reinvestigation results it issued on September 24, 2026.

114. Those reports were inaccurate. They reported a closed, charged-off, written-off Account as carrying a current $11,000 credit limit and a $25,322 current balance; they reported an account closed on September 10, 2023 as carrying a credit limit "from 03/2026 to 08/2026"; and they reported a payment history that conflicts with the payment history Experian publishes for the same Account, after having reported no payment history at all in February 2026. Each of these is either patently incorrect or misleading in such a way and to such an extent that it can be expected to adversely affect a credit decision. See Erickson v. First Advantage Background Servs. Corp., 981 F.3d 1246 (11th Cir. 2020); Holden v. Holiday Inn Club Vacations, Inc., 98 F.4th 1359 (11th Cir. 2024).

115. TransUnion failed to follow reasonable procedures to assure maximum possible accuracy of that information. From February 2026 forward TransUnion had written notice, with supporting documents, of the specific inaccuracies in the Tradeline, and it continued to publish the Tradeline. The inconsistencies were visible within a single tradeline block of TransUnion's own report and required no contact with the Furnisher to detect. And TransUnion's procedures for matching a consumer to his file were unreasonable as applied to Plaintiff: it told him on August 26, 2026 that it could not locate a credit report for him, while it located and furnished that report to the Furnisher on August 16 and September 3, 2026, to a lender on August 17, 2026, and to Plaintiff himself on September 3, 2026.

116. TransUnion's violations were willful, for the reasons stated in Count VII, and in reckless disregard of an unjustifiably high risk that its reports about Plaintiff were inaccurate. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007). In the alternative, pursuant to Fed. R. Civ. P. 8(d)(2), TransUnion's violations were negligent.

117. As a direct and proximate result of TransUnion's violations, Plaintiff suffered the injuries described in paragraphs 59 through 64. Plaintiff is entitled under 15 U.S.C. § 1681n to actual damages or, in the alternative, statutory damages of not less than $100 and not more than $1,000 for each willful violation, together with punitive damages and costs; or, if the violations were negligent, to actual damages and costs under 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Kanaat respectfully requests that this Court enter judgment in his favor and against each Defendant, and award the following relief:

A. For each willful violation, actual damages in an amount to be determined at trial or, in the alternative, statutory damages of not less than $100 and not more than $1,000, under 15 U.S.C. § 1681n(a)(1)(A);

B. For each negligent violation, actual damages in an amount to be determined at trial under 15 U.S.C. § 1681o(a)(1);

C. Punitive damages in an amount sufficient to punish and deter each Defendant's willful conduct under 15 U.S.C. § 1681n(a)(2);

D. Costs of suit under 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2) and Fed. R. Civ. P. 54(d), together with reasonable attorney's fees should Plaintiff retain counsel; and

E. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b).

Dated: October 5th, 2026

Respectfully submitted,

Robert Kanaat
Plaintiff, Pro Se
6760 Congress Avenue, #204
Boca Raton, FL 33487
Telephone: (310) 388-7389
Email: robert@wanderlustworker.com

## EXHIBIT INDEX

**Exhibit A** February 18, 2026 dispute letters to Experian, Equifax, and TransUnion, and TransUnion's February 28, 2026 acknowledgment.

**Exhibit B** Reinvestigation results on the February 2026 disputes: Equifax results dated February 27, 2026 (Confirmation Number 6057518346), results letter and results narrative, and Experian results dated March 10, 2026 (Report Number 3590-6396-14), "Verified and Updated."

**Exhibit C** August 25, 2026 dispute letters to Experian, Equifax, and TransUnion, with USPS certified-mail proofs of delivery dated August 27, August 27, and August 28, 2026.

**Exhibit D** Experian reinvestigation results dated September 2, 2026 (Report Number 2146-6454-52), including the Tradeline pages and the inquiry pages.

**Exhibit E** Equifax reinvestigation results dated September 2, 2026 (Confirmation Number 6241553989), "we have removed the item(s)," as addressed to 9754 Palma Vista Way.

**Exhibit F** September 4, 2026 dispute letter to Experian (enclosures omitted) with USPS certified-mail proof of delivery dated September 8, 2026.

**Exhibit G** Experian reinvestigation results dated September 23, 2026 (Report Number 4064-1801-84), including the Tradeline pages, the personal information pages, and the inquiry pages.

**Exhibit H** September 3, 2026 requests to Experian and Equifax for a description of the reinvestigation procedure under 15 U.S.C. § 1681i(a)(6)(B)(iii) and (a)(7), with USPS certified-mail proofs of delivery dated September 9 and September 7, 2026, and the renewed request mailed to Equifax on September 19, 2026.

**Exhibit I** Experian email dated September 15, 2026, subject "Important Information," from info@e.ncac.experian.com, with headers.

**Exhibit J** Equifax letters dated September 10, 2026 (Confirmation Number 6253525977), September 11, 2026 (Confirmation Numbers 6254513776 and 6254513766), September

19, 2026 (Confirmation Numbers 6262559474 and 6262559294), and September 26, 2026 (Confirmation Numbers 6269514732 and 6269505514).

**Exhibit K** September 14, 2026 demand to Equifax for the reinsertion certification and notice under 15 U.S.C. § 1681i(a)(5)(B), with USPS certified-mail proofs of delivery dated September 17 and September 24, 2026.

**Exhibit L** TransUnion letters dated February 12, 2026 (File Number 446240035, "Dispute Request - Proof of Current Mailing Address") and August 26, 2026 (File Number 471467697, "Unable to Locate Credit Report dispute request").

**Exhibit M** TransUnion consumer disclosure dated September 3, 2026 (File Number 446240035): personal information page, Tradeline page, and account review inquiry pages; and the account review inquiry pages of the TransUnion disclosure dated September 4, 2026 showing the September 3, 2026 DISCOVER CARD inquiry.

**Exhibit N** TransUnion letter dated September 11, 2026 (File Reference 446240035-135), with envelope.

**Exhibit O** FICO Score 8 disclosures dated February 17, 2026 computed from Equifax data (541) and TransUnion data (510), each listing the 230 percent ratio of revolving balances to credit limits as a factor; and Experian FICO score disclosures dated May 18, 2026 (FICO Score 8 of 494; FICO Bankcard Score 8 of 491; key factor: 230 percent ratio of revolving balances to credit limits).

**Exhibit P** TransUnion reinvestigation results dated September 24, 2026 (File Number 446240035), pages 1 to 6.

*Personal identifiers (Social Security numbers, dates of birth, and full account numbers) are redacted in all exhibits pursuant to Fed. R. Civ. P. 5.2(a).*